# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT CHATTANOOGA

QUINZELL LA'WON GRASTY, )
)
    Petitioner, )
)
v. ) No. 1:17-CV-247-CLC-SKL
)
MIKE PARRIS, Warden, )
)
    Respondent. )

## MEMORANDUM OPINION

Petitioner Quinzell La'Won Grasty, an inmate proceeding pro se, has filed a federal habeas petition pursuant to 28 U.S.C. § 2254 challenging the legality of his confinement under Tennessee judgments of conviction for felony murder, second-degree murder, attempted especially aggravated robbery, and aggravated burglary. Having considered the submissions of the parties, the State-court record, and the law applicable to Grasty's claims, the Court finds that the petition should be denied.

**I.    SUMMARY OF EVIDENCE & PROCEDURAL HISTORY**

Quinzell La'Won Grasty shot and killed Steven Matthew Coyle during a home invasion and attempted robbery that occurred on April 16, 2009 [*See* Doc. 9-1 at 5-7]. Sarah Gill, who lived with Coyle at the time of his murder, testified that she and Coyle were awakened by a "crashing noise" at approximately 9:00 a.m. on April 16, 2009 [Doc. 9-2 at 156, 164-166]. Coyle stated to her that he thought someone had broken into the house and opened the bedroom door to go investigate [*id*. at 166]. He was immediately shot in the head [*id*. at 167]. Gill saw Coyle on the floor with "a hole in his face" and called 911 [*id*. at 169].

Chattanooga Police Detective James Holloway, the lead investigator on the case, testified that at approximately 7:30 p.m. on April 16, 2009, he received a phone call from police dispatch

advising him that an Officer Tyrone Williams had requested that Detective Holloway call him [Doc. 9-3 at 109]. Detective Holloway called Officer Williams, who told him that an individual named Cordarious Holloway had approached him and stated that "he may have transported the suspects" to the crime scene [*id.*]. Detective Holloway interviewed Cordarious, who gave Detective Holloway names and nicknames of persons who might have been involved in the victim's death [*id*. at 111-12]. Based on these statements, in conjunction with a later-conducted surveillance operation, the police developed Grasty as a suspect [*id*. at 112-15]. Grasty was brought in for questioning, where he gave an initial statement to police [*id*. at 117-18].

During his initial statement, Grasty related conflicting accounts of his whereabouts at the time of the murder, including being dropped off at a Steak-n-Shake near the victim's residence, waiting at a nearby apartment complex, and waiting outside the victim's home while others went inside [Doc. 9-10 at 35-122]. Grasty finally admitted, however, that he was at the victim's house, that he had a shotgun in a bookbag, and that, after checking one of the rooms in the home, he heard the door open behind him [*id*. at 116-17]. Grasty stated "the gun went off. . . My hand wasn't just, I wasn't doing like this . . . I'm saying I know I didn't mean to kill the man, but it happened" [*id.* at 118-19]. The following exchange between the detective and Grasty then transpired:

> A. Yeah, he opened the door and then I was just turning around, know what I'm saying, and the gun went off. And I looked at him like, Oh, and just they took it, and then they took the gun and just dipped.
>
> Q. Who took it?
>
> A. Everybody that was in the car, they took the gun to the[] house and . . .
>
> Q. I mean you ran out with it, I guess, or no?
>
> A. Yeah, I had it in my hand when I ran out.
>
> ***
>
> Q. So when the dude opened the door, it scared you and you shot by accident?

> A. Yes, sir.
>
> Q. You didn't mean to kill the guy?
>
> A. No, sir.
>
> Q. And you don't know where the gun is now?
>
> A. No, sir.
>
> ***
>
> Q. Is everything that you've told us, here toward the end, the truth?
>
> A. Yes, sir.

[Doc. 9-10 at 119-121]. Prior to giving his statement, Grasty signed a form waiving his rights [Doc. 9-10 at 33].

Grasty then gave a second statement to police on May 6, 2009, where he recanted his earlier admission, stating he had only promised to "take the charge" because he was not facing any charges at the time of the murder, and the real perpetrator was already on house arrest [*id.* at 138-140]. Audio recordings of both statements were played for the jury at Grasty's trial [Doc. 9-3 at 127-30; Doc. 9-4 at 17-18].

Agent Mark Dunlap, a special agent forensic scientist in serology DNA for the Tennessee Bureau of Investigation ("TBI"), testified that a backpack found at the crime scene showed a mixture of genetic material from at least four different individuals, and that Grasty could not be excluded as a contributor [Doc. 9-4 at 76, 84, 91-92].

TBI Agent Steve Scott, an expert in firearms, testified that he analyzed shot shell waddings taken from the crime scene and determined that the wadding was consistent with a Winchester 12-gauge, AA type [*id.* at 125, 128-130, 138]. Agent Scott also reviewed portions of Grasty's statement where he described the weapon as 16 to 18 inches long with a sawed-off stock and

muzzle [*id*. at 142-43]. Based on that description and the recovered wadding, Agent Scott produced a replica firearm as a demonstrative exhibit at Grasty's trial [*id*. at 143]. The weapon was obtained from a reference collection of firearms maintained at the Nashville TBI facility, which is a collection maintained to borrow parts or produce exhibits for demonstration purposes in court [*id*. at 150-51]. Agent Scott testified that the purpose of sawing off a shotgun is to maneuver in an enclosed space and for concealment [*id*. at 147-48]. He demonstrated how the weapon could have fit within the backpack recovered from the murder scene [*id*. at 148].

Grasty did not testify at trial [Doc. 9-5 at 8-9]. A Hamilton County jury convicted Grasty of felony murder, second-degree murder, attempted especially aggravated robbery, and aggravated burglary [*id*. at 92-100]. He received an effective sentence of life imprisonment [*id*. at 101; Doc. 9-6; *see also* Doc. 9-1 at 101-104]. On appeal, the Tennessee Court of Criminal Appeals ("TCCA") affirmed his convictions and sentence. *See State v. Grasty*, No. E2012-00141-CCA-R3-CD, 2013 WL 1458660 (Tenn. Crim. App. Apr. 10, 2013), *perm. app. denied* (Tenn. Sept. 16, 2013) ("*Grasty I*"). The Supreme Court of Tennessee denied Grasty's application for discretionary review on September 16, 2013. *Id*.

On October 30, 2013, Grasty filed a petition for post-conviction relief [Doc. 9-18 at 3-10]. Counsel was subsequently appointed, and both Grasty and post-conviction counsel filed an amended post-conviction petition [*id*. at 12-13, 14-20]. Following an evidentiary hearing, the post-conviction court denied relief [*id*. at 96-115]. The TCCA affirmed the post-conviction court's decision on February 17, 2017. *Grasty v. State*, No. E2015-02075-CCA-R3-PC, 2017 WL 656905 (Tenn. Crim. App. Feb. 17, 2017), *perm. app. denied* (May 18, 2017) ("*Grasty II*"). The Supreme Court of Tennessee denied Grasty's application for discretionary review on May 18, 2017 [Doc. 9-27].

Thereafter, Grasty filed his petition for writ of habeas corpus on September 7, 2017, asserting the following grounds for relief, as paraphrased by the Court:

    I.       Whether Grasty received the ineffective assistance of counsel.

    II.      Whether the trial court erred in denying Grasty's petition for post-conviction relief.

[Doc. 2]. The Court ordered Respondent to answer or otherwise respond to the petition, and Respondent complied by filing an answer on May 23, 2018 [Doc. 12]. Grasty filed a response to the answer on June 20, 2018 [Doc. 13]. This matter is now ripe for review.

## II.    LEGAL STANDARD

The Court's review of the petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which prevents the grant of federal habeas relief on any claim adjudicated on the merits in a State court unless that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent; or (2) resulted in a decision based on an unreasonable determination of facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(1) & (2); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

Federal habeas relief may be granted under the "contrary to" clause where the State court (1) arrives at a conclusion opposite that reached by the Supreme Court on a question of law; or (2) decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal court may grant relief where the State court applies the correct legal principle to the facts in an unreasonable manner. *See id.* at 407-08; *Brown v. Payton*, 544 U.S. 133, 141 (2005). Whether a decision is "unreasonable" is an objective inquiry; it does not turn on whether the decision is merely incorrect. *See Schriro*, 550 U.S. at 473 ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that

determination was unreasonable − a substantially higher threshold."); *Williams*, 529 U.S. at 410-11. This standard will allow relief on a federal claim decided on its merits in State court only where the petitioner demonstrates that the State ruling "was so lacking in justification that there was an error understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). When evaluating the evidence presented in State court, a federal habeas court presumes the correctness of the State-court's factual findings unless the petitioner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

The doctrine of procedural default also limits federal habeas review. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (holding prisoner's procedural default forfeits his federal habeas claim). A procedural default exists in two circumstances: (1) where the petitioner fails to exhaust all of his available State remedies, and the State court to which he would be required to litigate the matter would now find the claims procedurally barred, and (2) where a State court clearly and expressly bases its dismissal of a claim on a State procedural rule, and that rule provides an independent and adequate basis for the dismissal. *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 731-32, 735 n.1 (1991). A procedural default may be circumvented, allowing federal habeas review of the claim, only where the prisoner can show cause and actual prejudice for the default, or that a failure to address the merits of the claim would result in a fundamental miscarriage of justice. *Id.* at 750; *see also Wainwright v. Sykes*, 433 U.S. 72, 87, 90-91 (1977). "Cause" is established where a petitioner can show some objective external factor impeded defense counsel's ability to comply with the State's procedural rules, or that his trial counsel rendered ineffective assistance. *See id*. at 753. Additionally, the prejudice demonstrated to overcome the default must be actual, not merely a possibility of prejudice. *See Maupin v. Smith*, 785 F.2d 135, 139 (6th Cir. 1986) (citations omitted); *see also United States v. Frady*, 456 U.S. 152, 170 (1982) (holding

6

prejudice showing requires petitioner to bear "the burden of showing, not merely that errors [in the proceeding] created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire [proceeding] with error of constitutional dimension") (emphasis in original). A fundamental miscarriage of justice occurs "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

### III. DISCUSSION

#### A. Ineffective Assistance of Counsel

Grasty alleges five individual claims of ineffective assistance of counsel [Doc. 2 at 6-11]. Specifically, he contends that trial counsel performed ineffectively in (1) failing to challenge his first statement to police on the ground that he had invoked his right to counsel; (2) failing to file a motion *in limine* to exclude gang references from his recorded statements to police; (3) failing to object to the use of a demonstrative shotgun during trial; (4) failing to object to the introduction of the backpack as evidence; and (5) failing to request that the trial court question jurors about a newspaper that was found in the jury box after the jury returned its verdict [*id*.].

These claims are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a habeas petitioner to satisfy a two-prong test to warrant federal habeas corpus relief: (1) he must demonstrate constitutionally deficient performance, and (2) he must demonstrate actual prejudice as a result of such ineffective assistance. *Strickland*, 466 U.S. 668 (1984). Deficiency is established when a petitioner can demonstrate that counsel's performance falls below an objective standard of reasonableness as measured by professional norms, such that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id*. at 687-88. A reviewing court's scrutiny is to be highly deferential of counsel's performance, with an effort to "eliminate the distorting effects of hindsight." *Id*. at 689. In fact, counsel is to be afforded a

7

presumption that his or her actions were the product of "sound trial strategy" and undertaken with the exercise of reasonable professional judgment. *Id*.

Prejudice is established when the petitioner can demonstrate to a reasonable probability that the result of the proceedings would have been different but for the challenged conduct, thereby undermining confidence in the reliability of the outcome. *Id.* at 694. However, an error, even if professionally unreasonable, does not warrant setting aside the judgment if it had no effect on the judgment. *Id.* at 691.

On habeas review, the issue for the district court is not whether the *Strickland* standard is met, but rather, whether the State-court's decision that *Strickland* was not met warrants relief under AEDPA standards. *See Harrington v. Richter*, 562 U.S. 86, 105 (2011) ("When 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."). Accordingly, when a *Strickland* claim has been rejected on its merits by a State court, a petitioner "must demonstrate that it was necessarily unreasonable" for the State court to rule as it did in order to obtain federal habeas relief. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011).

1. **Grasty's Statement to Police**

Grasty maintains that at some point during his initial statement to police, but after waiving his *Miranda*[1] rights, he asked "[c]an I have a lawyer?" He maintains that he was ignored, and that his counsel should have argued this event rather than stipulate that *Miranda* had not been violated. Trial counsel's actions, he maintains, constituted ineffective assistance under *Strickland* [Doc. 2 at 6-7].

---

[1] In *Miranda v. Arizona*, the Supreme Court determined that the Fifth Amendment's prohibition against compelled self-incrimination requires that custodial interrogations be preceded by advice to the accused, such as of the right to remain silent and the right to request the presence of an attorney. *See Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966).

8

The Fifth Amendment to the United States Constitution, applicable to the States through the Fourteenth Amendment, provides criminal defendants a privilege against compulsory self-incrimination. U.S. Const. Amend. V ("No person . . . shall be compelled in any criminal case to be a witness against himself[.]"); *Malloy v. Hogan*, 378 U.S. 1, 6 (1963) (holding Fifth Amendment is applicable to the States). An accused subject to a custodial interrogation may waive this privilege, provided the waiver is "voluntarily, knowingly, and intelligently" executed. *Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966). A valid waiver, therefore, prevents a statement from being "compelled" in the constitutional sense. *Colorado v. Spring*, 479 U.S. 564, 573 (1987) (citation omitted).

However, if a suspect invokes his right to remain silent or states that he wants an attorney "at any time prior to or during questioning," then "interrogation must cease until an attorney is present." *Miranda*, 384 U.S. at 474. This invocation of rights must be clear to a reasonable officer; ambiguity or equivocation in the request for an attorney will not require an officer to cease questioning or clarify the suspect's intention. *Davis v. United States*, 512 U.S. 452, 459 (1994).

In this case, Grasty signed a waiver of rights and began answering questions about his involvement with police [Doc. 9-10 at 33]. After being reminded that "this is your opportunity to tell your side of it and we're willing to listen," Grasty stated, "Can I have a lawyer but I'll tell you the . . . I tell you exactly what happened though, you know what I'm saying [Doc. 9-10 at 43; Doc. 9-21 at 249]. Officers then sought clarification:

OFFICER: Well which is it, you want a lawyer or you want to tell me what happened?

GRASTY: I want a lawyer but I wanna, you know what I'm saying, just make sure he just, you know what I'm saying,

OFFICER: Well, I mean I can't. . .

9

| | |
|---|---|
| GRASTY: | But I don't. . . alright, you know what I'm saying, I heard about the murder. I wasn't there. I didn't pull the trigger, none of that, you feel me. I know. . . I . . . know what I'm saying, I know who was there. |
| OFFICER: | Quinzell let me. . . let me . . . let me straighten one (1) thing out, okay. Alright. Two (2) times now you said can I have a lawyer, okay? Do you want a lawyer or do you want to tell me what you know? |
| GRASTY: | I tell you. . . I said . . . this what I'm trying to say. I can have a lawyer here and I call tell you the truth, you know what I'm saying, tell you what happened. I was gonna have a lawyer here just in, you understand, he . . . he, you know what I'm saying, can be here, you feel me. |
| OFFICER: | I understand. |
| GRASTY: | That's the only reason why I was saying a lawyer. |
| OFFICER: | Okay. |
| GRASTY: | So he can be here. |
| OFFICER: | What I'm . . . |
| GRASTY: | But I'm saying would you. . . would you actually, would you do that sir? |
| OFFICER: | What I. . . what I'm trying to say is if you want to talk to me now without a lawyer that's fine. If you want a lawyer we can't talk anymore. |
| GRASTY: | I'm saying okay. I don't need no lawyer. I. . . I know some. . . I know about a murder but I wasn't the one (1) who did it. |

[Doc. 9-21 at 249-51].

During Grasty's post-conviction evidentiary hearing, trial counsel testified that he focused his suppression motion on arguing that Grasty's statement was unconstitutional because Grasty was seized from his residence without probable cause [Doc. 9-19 at 54]. Counsel stated he did not see a viable *Miranda* claim and noted that Grasty's equivocal request for counsel was retracted [Doc. 9-19 at 57-60].

10

The post-conviction court found that "after listening to a recitation of his rights and a waiver of rights, the petitioner unhesitatingly waived his rights" and concluded that counsel's failure to challenge the admissibility of Grasty's initial statement based on the alleged denial of counsel was not prejudicial [Doc. 9-18 at 109-10]. The TCCA affirmed that decision on post-conviction appellate review, finding that Grasty "was given proper *Miranda* warnings," and though "he indicated he wanted an attorney, [Grasty] then changed his mind and said, 'I don't need a lawyer.'" *Grasty II*, 2017 WL 656905, at *11-12.

This Court's review of the record confirms that Grasty made an equivocal request for counsel, and that officers took measures to clarify his request. There was no violation of Grasty's right to counsel under the Sixth Amendment, and there is nothing in the record that would indicate that a motion to suppress Grasty's statement on this ground would have been fruitful. *See, e.g., Davis*, 512 U.S. 452 at 462 (holding statement "Maybe I should talk to a lawyer" to be an equivocal request for counsel that did not require questioning to cease). Therefore, Grasty cannot demonstrate either deficiency or prejudice as a result of failure to seek suppression of his statement on the basis of denial of right to counsel. Accordingly, the Court finds that the rejection of this claim was not contrary to, nor was it an unreasonable application of, *Strickland* and its progeny, nor was it based on an unreasonable determination of facts in light of the evidence presented. Grasty is not entitled to relief on this claim.

### 2. Motion *in Limine*

Grasty next argues that trial counsel was ineffective for "failing to file a Motion *in Limine* to exclude references in a statement by Petitioner to gang activity" [Doc. 2 at 7-8].

Grasty raised this issue first in his post-conviction appeal proceedings [Doc. 9-18 at 3-10, 14-19; Doc. 9-24 at 24-26]. On appeal from the denial of his post-conviction petition, the TCCA found:

11

> Petitioner argues that trial counsel "should have made an argument that any gang related activities should have been excluded pursuant to Rule 404(b) of the Tennessee Rules of Evidence." He also asserts that trial counsel erroneously argued that the evidence should have been excluded under Rule 403 of the Tennessee Rules of Evidence. However, this specific issue was not raised in Petitioner's post-conviction petitions nor did he raise it at the evidentiary hearing. Therefore, it is waived. An issue for review by this court must first be raised in the petition for post-conviction relief or amended petition. Tenn. S. Ct. R. 28 § 8(D)(4)[.] [remaining citations excluded].

*Grasty II*, 2017 WL 656905, at *12.

In *Harris v. Reed*, the Supreme Court of the United States held that "reconsideration of [a] federal issue on federal habeas [is curtailed] as long as the state court explicitly invokes a state procedural bar rule as a . . . basis for decision." 489 U.S. 255, 264 n.10 (1989); *see also Coleman*, 501 U.S. at 731-32, 735 n.1. Here, the TCCA clearly and expressly applied its regularly-enforced waiver rule to forego a merits adjudication of Grasty's claim. *See* Tenn. Sup. Ct. R. 28 § 8(D)(4). The Sixth Circuit has established that a State-court's enforcement of State-law waiver principles supplies an adequate and independent State law ground which will bar federal habeas review. *Cone v. Bell*, 492 F.3d 743, 758 (2007). Therefore, Grasty must establish cause and prejudice exist to excuse the default, or his claim must be denied.

In *Martinez v. Ryan*, the United States Supreme Court held that the ineffective assistance of post-conviction counsel may, under limited circumstances, qualify as cause to excuse the procedural default of ineffective assistance-of-trial counsel claims. *Martinez*, 566 U.S. 1, 16 (2012); *Sutton v. Carpenter*, 745 F.3d 787, 795-96 (6th Cir. 2014) (applying *Martinez* in Tennessee). To constitute "cause" to overcome a procedural default under *Martinez*, a petitioner must show that (1) he has a substantial claim of ineffective assistance of trial counsel; (2) counsel on initial State collateral review was nonexistent or ineffective; (3) the State collateral proceeding was the first occasion on which to raise a claim of ineffective assistance of trial counsel; and

(4) State law requires that the ineffectiveness of trial counsel claim be raised for the first time during the State collateral proceeding. *Trevino v. Thaler*, 569 U.S. 412, 423 (2013).

Here, Grasty's claim is not substantial. His sole argument is that trial counsel's failure to file a motion *in limine* to exclude references of gang involvement from his statement "can hardly be denied [Doc. 2 at 8]. He presents no argument that he had ineffective assistance of post-conviction counsel. Regardless, post-conviction counsel is not constitutionally required to raise every conceivable issue during collateral review proceedings. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983) (noting attorneys often "emphasize[] the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues"). Generally, the determination of which issues to raise on appeal is a matter left to the discretion of counsel. *Barnes*, 463 U.S. at 750. Discretion exercised within the range of competence required of attorneys is afforded great deference on review. *See Strickland*, 466 U.S. at 690 (noting "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable"). Therefore, Grasty has failed to demonstrate that his counsel was deficient or that he has a substantial claim under *Martinez*, and his claim is procedurally defaulted on the basis of an independent and adequate State procedural rule.

Moreover, the Court notes that even if this claim were not procedurally defaulted, Grasty would not be able to satisfy *Strickland*. On direct appeal, Grasty argued that under Tennessee evidentiary rules, the trial court erred by failing to redact references to gang affiliation from his second recorded statement to police [Doc. 9-13 at 50-52]. The TCCA rejected his argument. *See Grasty I*, 2013 WL 1458660, at *9. Therefore, Grasty's underlying claim is based solely on State law, and this Court is bound by Tennessee's interpretation of its own law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (holding "it is not the province of a federal habeas court to reexamine state-

13

court determinations on state-law questions"). Therefore, this claim is procedurally defaulted and otherwise without merit.

        **3.**        **Demonstrative Evidence**

Grasty claims that trial counsel rendered ineffective assistance in failing to object to the use of a "fake" shotgun at trial, where prosecutors used the evidence to show that a modified shotgun would fit inside the backpack containing Grasty's DNA that was recovered from the murder scene [Doc. 2 at 8]. Grasty asserts that the use of this evidence "violate[d] the rules of evidence" [*id.*].

Grasty argued on direct appeal that the use of the shotgun violated Rule 403 of the Tennessee Rules of Evidence [Doc. 9-13 at 53-58]. On direct appeal the State appellate court found that the use of a demonstrative shotgun was not improper because it "assist[ed] the trier of fact in understanding Agent Scott's testimony," "was relevant to the elements of intent and premeditation and to show how a weapon could be concealed in a backpack," and because "[t]he trial court admitted the shotgun for demonstrative purposes only and instructed the jury that the shotgun was not used in the shooting[.]" *Grasty I*, 2013 WL 1458660, at *10.

Grasty argued trial counsel's ineffectiveness in failing to raise this issue during post-conviction proceedings [*See* Doc. 9-18 at 60-61]. On post-conviction appeal, the TCCA found that "demonstrative evidence, including a reenactment of the crime, may be introduced at trial, and the decision to allow a courtroom demonstration as evidence rests within the discretion of the trial court." *Grasty II*, 2017 WL 656905, at *13 (citation omitted). The court concluded that "there was no error in admitting the shotgun for demonstrative purposes," and that Grasty failed to show that counsel was deficient, or that prejudice ensued, with regard to this issue. *Id*.

As the Court noted above, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67-68. Rather, "a state

14

court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle*, 502 U.S. at 67-68). Therefore, this Court cannot find that trial counsel's performance was deficient under *Strickland*.

Additionally, Grasty cannot establish prejudice with regard to this issue. Control over the evidence is committed to the discretion of the trial court. In this case, Grasty described the weapon to police, a firearms expert matched that description to a weapon in a reference collection maintained by the TBI, and the expert used the weapon at trial to demonstrate the approximate size, concealment potential, and operation of the weapon [Doc. 9-10 at 109-10; Doc. 9-4 at 114-17]. The trial court determined the expert's demonstrative testimony was probative of whether the weapon would fit into the backpack retrieved from the scene [Doc. 9-4 at 124-25]. Given these circumstances, Grasty cannot establish that he was prejudiced by his attorney's failure to challenge the use of this demonstrative evidence under the State's evidentiary rules.

Accordingly, the Court finds that the rejection of this claim was not contrary to, nor was it an unreasonable application of, *Strickland* and its progeny, nor was it based on an unreasonable determination of facts in light of the evidence presented. Grasty is not entitled to relief on this claim.

### 4. Backpack as Evidence

Grasty maintains that his trial counsel was ineffective for stipulating that the "chain of evidence was not violated relative to the backpack allegedly belonging to the Petitioner" [Doc. 2 at 9]. He asserts that this backpack was the only physical evidence used against him at trial, and that under Tennessee Rule of Evidence 901(a), the backpack was not properly authenticated or identified prior to its use at trial [*id*. at 10].

15

Grasty raised this issue in post-conviction proceedings, where the post-conviction court determined there was "no evidence of any pre-collection contamination of physical evidence or any post-collection break in the chain of custody of physical evidence" in this case, "including the backpack" [Doc. 9-18 at 112]. The TCCA affirmed that decision on appeal, finding that Grasty had failed to produce evidence at the post-conviction hearing "to undermine the chain of custody of the backpack." *Grasty II*, 2017 WL 656905, at *14-15.

At his post-conviction evidentiary hearing, Grasty failed to produce any witnesses or evidence supporting this claim, and the State courts properly refused to speculate as to what benefit some unproduced witness or evidence might show. *Adams v. Jago*, 703 F.2d 978, 981 (6th Cir. 1983) (petitioner failed to meet burden of proving constitutional deprivation of right to effective assistance of counsel where there was nothing in record to demonstrate content of uncalled witness testimony). Moreover, in light of the entirety of the record, including Grasty's own statements to police, he cannot establish that he was prejudiced by trial counsel's actions with regard to this issue.

Accordingly, the Court finds that the rejection of this claim was not contrary to, nor was it an unreasonable application of, *Strickland* and its progeny, nor was it based on an unreasonable determination of facts in light of the evidence presented. Grasty is not entitled to relief on this claim.

      **5.**     **Newspaper in Jury Box**

Grasty asserts that the State court erred in rejecting his claim that trial counsel was ineffective for failing to request that the trial court question jurors about a newspaper that was found in the jury box after the verdict was rendered and the jurors released [Doc. 2 at 10]. Grasty argues that he was prejudiced by trial counsel's actions, because the newspaper "violated the rules of criminal procedure" [*id.*].

16

During Grasty's motion for a new trial, Bailiff Bob Ball testified that he had a newspaper in a sack at his courtroom post, which was about a foot and a half, from the jury box [Doc. 9-9 at 40-41]. He testified that the newspaper was for his personal use, and that at no time did any of the jurors read his paper [*id.* at 41-42]. After hearing all of the evidence on this issue, the trial court found "[t]here is absolutely no evidence, no evidence in the record that a juror saw, read or looked at [the bailiff's] newspaper at all" [*id.* at 56].

Grasty presented this issue to on post-conviction review, where the post-conviction court found Grasty failed to present any evidence that trial counsel's performance was deficient or that he was prejudiced by any alleged deficiency. *Grasty II*, 2017 656905, at *16.

Given Grasty's failure to rebut the facts determined by the post-conviction court following its evidentiary hearing, the Court finds that the rejection of this claim was not contrary to, nor was it an unreasonable application of, *Strickland* and its progeny, nor was it based on an unreasonable determination of facts in light of the evidence presented. Grasty is not entitled to relief on this claim.

### B. Rejection of Post-Conviction Petition

In his second ground for relief, Grasty argues that the State court generally erred by denying each of his ineffective assistance of counsel claims [Doc. 2 at 11]. This Court has reviewed those claims and determined that the State court identified and reasonably applied the proper governing law, and that it reasonably applied the law to the facts of the case. Grasty has not provided the Court with any basis to overturn the State court's rejection of his claims, and therefore, this claim fails to warrant federal habeas relief.

## IV. CERTIFICATE OF APPEALABILITY

A petitioner must obtain a certificate of appealability ("COA") before he may appeal this Court's decision denying federal habeas relief. 28 U.S.C. § 2253(c)(1). A COA will not issue

unless a petitioner makes "a substantial showing of the denial of a constitutional right" of any claim rejected on its merits, which a petitioner may do by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a COA on a claim that has been rejected on procedural grounds, a petitioner must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Applying this standard, the Court concludes that a COA should be denied in this case.

## V. CONCLUSION

Grasty has failed to demonstrate an entitlement to federal habeas relief. Therefore, his petition for a writ of habeas corpus will be **DENIED**, and this action will be **DISMISSED WITH PREJUDICE**. A certificate of appealability from this decision will be **DENIED**.

Further, the Court will **CERTIFY** that any appeal from this action would not be taken in good faith and would be totally frivolous. Fed. R. App. P. 24.

**AN APPROPRIATE ORDER WILL ENTER.**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**